CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 24 2010

JULIA C. DUDLEY, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| **CHEVRON CORP.,** ) <br> ) <br> *Petitioner,* ) <br> ) <br> *To Issue Subpoenas for the Taking* ) <br> *of Depositions and the Production* ) <br> *of Documents.* ) <br> ) | Civil Action No. 7:10-mc-00067 <br><br> **MEMORANDUM OPINION** <br><br> By: James C. Turk <br> Senior United States District Judge |

This matter is before the Court on Chevron Corporation's ("Chevron") application for an Order to Conduct Discovery for Use in Foreign Proceedings pursuant to United States Code, Title 28, Section 1782. (Dkt. 1). Chevron submitted a memorandum of law in support of its application (Dkt. 2), Plaintiffs responded (Dkt. 14), Chevron replied (Dkt. 22), and, with leave of the Court, Plaintiffs filed a sur-reply (Dkt. 26). The parties presented oral arguments to the Court on November 22, 2010, and the matter is now ripe for decision. For the foregoing reasons, Chevron's application is hereby **GRANTED**.

**I. Procedural History and Background**

This application arises out of nearly two decades of litigation surrounding Texaco's oil exploration and extraction in Ecuador from 1964–1992. Texaco became a wholly-owned subsidiary of Chevron in 2001. In 1993, a group of Ecuadorians residing in the region where Texaco's activities took place brought a class action suit in the Southern District of New York, styled as *Aguinda v. Texaco*, seeking billions of dollars in environmental damages stemming from Texaco's operations. In 2001, the Southern District of New York dismissed the *Aguinda* case upon motion by Texaco on *forum non conveniens* grounds. The Second Circuit affirmed in

2002, with the stipulation that Chevron not attempt to return the litigation back to the United States.

In 2003, a group of Ecuadorian citizens, including many of the same *Aguinda* plaintiffs, filed suit against ChevronTexaco in Lago Agrio, Ecuador ("Lago Agrio Litigation"), asserting environmental damage claims. The government of Ecuador announced that it would receive ninety percent of any recovery from the Lago Agrio litigation. In 2007, pursuant to the tenants of the Ecuadorian civil law system, the Lago Agrio court ordered that an "impartial" and "independent" damages assessment be conducted by a team of expert witnesses led by Richard Stalin Cabrera Vega. Chevron alleges that this assessment, the "Cabrera Report," was fraudulently authored by a team of Plaintiffs' lawyers, and not by environmental experts, and has sought discovery in many United States District Courts pursuant to 28 U.S.C. § 1782 on this issue. Chevron asserts that it has discovered significant evidence of fraud and corruption as a direct result of this § 1782 discovery.

In 2009, Chevron initiated arbitration before a panel in The Hague in accordance with the United States-Ecuador Bilateral Investment Treaty (the "Treaty"), asking the panel to order the Ecuadorian court to dismiss the Lago Agrio litigation because the case is replete with corruption and improper collusion between the government of Ecuador and the Plaintiffs.

Recognizing this maelstrom, the Ecuadorian court allowed the Plaintiffs and Chevron to submit new damages evidence on September 16, 2010. The Plaintiffs submitted six expert reports,[1] including one by Professor Robert Scardina ("Scardina") of Christiansburg, Virginia. Scardina's report discusses the Cabrera Report at some length. Chevron's § 1782 motion seeks

---

[1] The total damage assessment of the six experts totals more than $100 billion.

2

to compel Scardina's deposition testimony and his production of documents related to the environmental damage in Ecuador.

**II. 28 U.S.C. § 1782**

Section 1782 authorizes "[t]he district court of the district in which a person resides or is found [to] order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . ." Section 1782 mandates that a court find that three threshold requirements have been met before it may grant an application. First, the order must be issued by "[t]he district court . . . of the district in which [respondent] resides or is found." Second, the discovery must be "for use in a proceeding in a foreign or international tribunal." And third, the order can only be made upon "application of any interested person." 28 U.S.C. § 1782(a).

In this case, Scardina lives and works in Christiansburg, Virginia and thus "resides or is found" in the Western District of Virginia. Also, Chevron is undoubtedly an "interested person" because it is a defendant in the Lago Agrio Litigation and a claimant in the Treaty arbitration. *See, e.g., In re Applic. of Chevron Corp.*, 709 F. Supp. 2d 283, at 291 (S.D.N.Y. 2010); *In re Merck & Co.*, 197 F.R.D. 267, 270 (M.D.N.C. 2000) (holding "interested persons" to include parties to international litigation). Further, Plaintiffs and Scardina concede that the Lago Agrio Litigation in the Ecuadorian courts is a proceeding in a "foreign or international tribunal."[2]

---

[2] Plaintiffs and Scardina contend that the arbitral tribunal is not a "foreign or international tribunal" within the meaning of § 1782. Instead, they argue that the arbitration is "private," and merely governed by the Arbitration Rules of the United Nations Commission on International Trade Law ("UNCITRAL"), not officially sanctioned by the United Nations Commission on International Trade Law or any other official authority. Therefore, Plaintiffs assert, the Court cannot grant the application because not all of the statutory factors of § 1782 have been met. *See Nat'l Broadcasting Co. v. Bear Stearns & Co.*, 165 F.3d 184, 191 (2d Cir. 1999). However, the Court need not decided whether the pending Treaty arbitration is an action in a "foreign or international tribunal." The requirement that the discovery be used for proceedings in a "foreign

3

Therefore, Chevron has met all of the § 1782 statutory requirements, and the Court has the authority to grant its application.

## III. *Intel* Factors

However, a court is not required to grant a § 1782 application if statutorily permitted to do so. "Once the statutory requirements are met, a district court is free to grant discovery in its discretion." *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264; *Schmitz v. Bernstein, Liebhard & Lifshitz, LLP*, 376 F. 3d 79, 83 (2d Cir. 2004); *In re Application of Microsoft Corp.*, 428 F. Supp. 2d 188, 192 (S.D.N.Y. 2006). In *Intel*, the Supreme Court laid out four discretionary factors to guide the courts in ruling on a § 1782 application: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) the receptivity of the foreign tribunal to U.S. court assistance; (3) whether the § 1782 application is an attempt to "circumvent foreign proof-gathering restrictions"; and (4) whether the documents and testimony sought are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65. These factors all support granting Chevron's § 1782 application.

First, Scardina is a party to neither the Lago Agrio Litigation nor the Treaty arbitration. *See Intel*, 542 U.S. at 264; *In re Roz Trading Ltd.*, No. 1:06-cv-02305, 2007 WL 120844, at *6 (N.D. Ga. Jan. 11, 2007) ("Respondent is not a party to the arbitration, and on this ground alone the first *Intel* factor is satisfied."). Scardina also resides outside the jurisdiction of both tribunals, and those tribunals cannot order the discovery Chevron seeks here. *Intel*, 542 U.S. at 264. Scardina is thus not a participant in the foreign proceedings, and the first *Intel* factor is met.

---

or international tribunal" is already met because of the Lago Agrio Litigation pending in Ecuadorian court. This fact provides an independent basis for the Court to decide that it may grant Chevron's application under § 1782.

4

The parties dispute the Ecuadorian court's receptiveness of § 1782 discovery. The basic purpose of § 1782 is "to assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, for reasons having no bearing on international comity, they cannot obtain under their own laws . . . ." *Id.* at 262. Receptivity, though, is not a question of whether the foreign court *itself* would order or even permit discovery in the same case, but rather is a question of how a foreign court "might respond to § 1782 assistance from a United States court." *In re Applic. Of OOOO Promnefstroy*, No. M 19-99, 2009 WL 3335608, at *7 (S.D.N.Y. Oct. 15, 2009). A survey of the relevant case law indicates that the respondent to a § 1782 bears the burden of proving that the foreign tribunals are unreceptive to the discovery sought. *In re Bayer AG*, 146 F.3d 188, 196 (3d Cir. 1998); *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995). To meet this burden, a respondent must demonstrate a "clear directive" or "authoritative proof that [the] foreign tribunal would reject evidence obtained with the aid of section 1782," such as "judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures." *Euromepa*, 51 F.3d at 1100.

The respondents here have provided some evidence that the Ecuadorian courts might afford the discovery sought here little weight. But, this Court cannot be assured that the Ecuadorian courts or the Treaty arbitration panel would afford the discovery from Scardina *no* weight. If the Scardina discovery is indeed fruitless, those tribunals are free to disregard it. However, respondents have proffered nothing to indicate that if the Scardina discovery unearths important evidence, the foreign tribunals will still be unreceptive. Indeed, "[d]istrict courts have granted Section 1782 applications routinely in connection with matters pending in Ecuadorian courts, including the Lago Agrio Litigation." *In re Applic. of Chevron Corp.*, 709 F. Supp. 2d 283, 292 (S.D.N.Y. 2010); *see also Norfolk S. Corp. v. Gen. Sec. Ins. Co.*, 626 F. Supp. 2d 882

5

(N.D. Ill. 2009); *Ukrnafta v. Carpatsky Petroleum Corp.,* No. 3:09 MC 265 (JBA), 2009 U.S. Dist. LEXIS 109492 (D. Conn. Aug. 27, 2009); *In re Oxus Gold PLC,* No. MISC 06-82-GEB, 2007 U.S. Dist. LEXIS 24061 (D.N.J. Apr. 2, 2007); *In the Matter of Compania Chilena de Navegación Interoceanica S.A.,* No. 03 CV 5382 (ERK), 2004 U.S. Dist. LEXIS 6408 (E.D.N.Y. Jan. 29, 2004); *In re Application of Noboa,* Nos. M18-302, M19-111, 1995 U.S. Dist. LEXIS 14402 (S.D.N.Y. Oct. 3, 1995). Further, any perceived lack of receptivity must be considered in light of the purpose of the proposed discovery: to find evidence of fraud in the Ecuadorian proceedings. Accordingly, the second *Intel* factor weighs in favor of granting Chevron's application.

With respect to the third *Intel* factor, Chevron's § 1782 application does not attempt to circumvent the proof-gathering restrictions of the foreign tribunals. In determining whether a petition is an effort to circumvent foreign proof-gathering restrictions, the issue is whether the discovery is being sought in bad faith. *Minatec Fin. S.A.R.L. v. SI Group Inc.,* No. 1:08-CV-269 (LEK/RFT), 2008 U.S. Dist. LEXIS 63802, at *26 (N.D.N.Y Aug. 18, 2008). Based on the evidence submitted, Chevron's request for discovery is a good faith effort to obtain probative evidence relevant to a foreign proceeding. Furthermore, neither the Ecuadorian court nor the arbitration panel could order the discovery Chevron seeks because Scardina is not subject to either tribunal's jurisdiction. Therefore, the third *Intel* factor supports granting Chevron's application.

Finally, the respondents argue that Chevron's § 1782 application is "an intrusive and burdensome fishing expedition." Pl. Resp. at 21 (Dkt. 14). From the respondents briefs and oral arguments, it is clear that the burden and intrusion they claim to suffer does not come from Chevron's request to depose Scardina, but rather comes from the cumulative effect of numerous

other § 1782 applications that Chevron has filed, which the respondents assert is merely an attempt to drain their resources. Without commenting on the merits of that position, the numerosity of Chevron's applications does not change the fact that Plaintiffs solicited Scardina's expert opinion on the damages in the Lago Agrio Litigation, an opinion that could possibly contribute to Chevron's incurring hundreds of millions of dollars in liability. Chevron's request to seek discovery from Scardina is entirely reasonable in this particular situation. Furthermore, the parties have agreed to a compressed discovery schedule, so there is little danger that this discovery will be onerous. Chevron's instant § 1782 application is not overly intrusive or burdensome, and therefore all four *Intel* factors support granting the application.

The respondent's also urge that discovery should be denied because the information sought from Scardina is privileged. However, Scardina provided testimony directly to the Ecuador court, and therefore he is a testifying expert. Pursuant to Rule 26 of the Federal Rules of Civil Procedure, which applies to discovery under § 1782, there is no privilege as to the information regarding Scardina's work product relating to his report, the information conveyed by Scardina to Plaintiffs, or the information or documents Scardina relied on in formulating his testimony.

## IV. Conclusion

Chevron's application satisfies both the statutory requirements of 28 U.S.C. § 1782 and the discretionary factors set forth by the Supreme Court in *Intel*. For the reasons stated above, it is hereby **ORDERED** that Chevron's application for an Order to Conduct Discovery for Use in Foreign Proceedings (Dkt. 1) is **GRANTED**. The Clerk of Court is directed to send a copy of this Memorandum Opinion and accompanying Final Order to counsel of record for both parties.

**ENTER:** This 24th day of November, 2010.

/s/ James C. Turk
Senior United States District Judge